FAGEN FRIEDMAN & FULFROST, LLP
Lenore Silverman, SBN 146112
lsilverman@f3law.com
Kimberly A. Smith, SBN 176659
ksmith@f3law.com
David R. Mishook, SBN 273555
dmishook@f3law.com
70 Washington Street, Suite 205
Oakland, California  94607
Phone: 510-550-8200
Fax: 510-550-8211

Attorneys for TAMALPAIS UNION HIGH
SCHOOL DISTRICT

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

| | |
|---|---|
| TAMALPAIS UNION HIGH SCHOOL DISTRICT, a local educational agency,<br><br>    Plaintiff,<br><br>    vs.<br><br>D.W., a minor,<br><br>    Defendant. | Case No.:  3:16-CV-04350-HSG<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE WHY PRELIMINARY INJUNCTION SHOULD NOT ISSUE STAYING ENFORCEMENT OF ADMINISTRATIVE DECISION**<br><br>*Filed Concurrently With:*<br><br>(1) Notice of *Ex Parte* Motion<br>(2) Declaration of Amira Mostafa<br>(3) Declaration of David R. Mishook<br>(4) Proposed Order<br>(5) Complaint and Exhibit thereto (Docket No. 1, No. 1-1) |

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

*Fagen Friedman & Fulfrost, LLP*
*70 Washington Street, Suite 205*
*Oakland, California 94607*
*Main: 510-550-8200 • Fax: 510-550-8211*

# <u>TABLE OF CONTENTS</u>

Fagen Friedman & Fulfrost, LLP
70 Washington Street, Suite 205
Oakland, California 94607
Main: 510-550-8200 • Fax: 510-550-8211

**Page**

I.   INTRODUCTION ................................................................................................ 1

II.  BACKGROUND ................................................................................................ 2

III. ARGUMENT .................................................................................................... 7

   A.   Standard of Review ................................................................................. 7

   B.   Ninth Circuit Precedent Already Holds that Appealed IDEA Administrative Orders are Not Enforceable. ................................................................ 7

   C.   Equitable Considerations Favor Grant of the TRO. ................................. 8

      1.   Likelihood of Success ................................................................. 9

      2.   Irreparable Harm ....................................................................... 11

      3.   Balance of Equities and the Public Interest ................................. 12

      4.   The Threat of Injury Is Immediate. ............................................ 13

IV.  CONCLUSION ................................................................................................ 13

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist., Westchester Cty. v. Rowley*,458 U.S. 176 (1982) ......................................................................................................................... 9

*C.B. v. Garden Grove Unified School Dist.*, 635 F.3d 1155 (9th Cir. 2011) ................................ 13

*D.C. v. Masucci*, 13 F. Supp. 3d 33, 41 (D.D.C. 2014) .................................................................. 12

*Henry Schein, Inc. v. Cook*,
No. 16-CV-03166-JST, 2016 WL 3212457 (N.D. Cal. June 10, 2016).................................... 7

*J.L. v. Mercer Island Sch. Dist.*, 592 F.3d 938 (9th Cir. 2010) ...................................................... 10

*Jenkins v. Squillacote*, 935 F.2d 303 (D.C. Cir. 1991)................................................................... 12

*Katherine G. ex rel. Cynthia G. v. Kentfield Sch. Dist.*, 261 F. Supp. 3d 1159 (N.D. Cal. 2003), *aff'd sub nom. Katherine G. v. Kentfield Sch. Dist.*, 112 F. App'x 586 (9th Cir. 2004) (*aff'd on other grounds*) ........................................................................................................................ 12

*Porter v. Bd. of Trustees of Manhattan Beach Unified Sch. Dist.*,
307 F.3d 1064 (9th Cir. 2002). Here, the Administrative Order......................................... 1, 7

*SM v. Cupertino Union Sch. Dist.*,
No. C 05-04618 JF, 2006 WL 1530025 (N.D. Cal. June 2, 2006)........................................... 7

*Town of Burlington v. Dep't of Educ. for Com. of Mass.*,
736 F.2d 773 (1st Cir. 1984), *aff'd sub nom. Sch. Comm. of Town of Burlington, Mass. v. Dep't of Educ. of Mass.*, 471 U.S. 359 (1985) ......................................................................... 12

*Union School Dist. v. Smith*, 15 F.3d 1519 (9th Cir. 1994) ........................................................... 10

**Federal Statutes**

20 U.S.C. § 1415(i)(1)(A) ...................................................................................................... 1, 7, 12

**California Statutes**

5 Cal. Code Regs. § 3080 ................................................................................................................ 11

5 Cal. Code Regs. § 4670 ................................................................................................................ 11

**Other Authorities**

34 C.F.R. 300.150 *et seq.* ................................................................................................................ 11

34 C.F.R. 300.514 ............................................................................................................................. 8

Fagen Friedman & Fulfrost, LLP
70 Washington Street, Suite 205
Oakland, California 94607
Main: 510-550-8200 • Fax: 510-550-8211

MOTION FOR TRO AND ORDER TO SHOW CAUSE

34 C.F.R. § 300.518(d)...................................................................................................... 8

Federal Rule of Civil Procedure 65(b) .............................................................................. 7

Fagen Friedman & Fulfrost, LLP
70 Washington Street, Suite 205
Oakland, California 94607
Main: 510-550-8200 • Fax: 510-550-8211

MOTION FOR TRO AND ORDER TO SHOW CAUSE

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

**I.     INTRODUCTION**

Among the procedural rights afforded to both students and public school districts in the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq.*, is the right to seek *de novo* review of an adverse state administrative due process holding in state or federal court.  *See* 20 U.S.C. § 1415(i)(2)(A).  Such review is not a purely academic exercise.  Rather, judicial review of an administrative decision allows students and local educational agencies (e.g., school districts) the ability to challenge to both the underlying factual and legal conclusions of the state administrative body and to challenge the equitable relief ordered as a result.

When the relief ordered by an administrative body is compensatory for alleged past violations of a student's right to a free appropriate public education ("FAPE"), if appealed, any administrative order for past relief must be stayed.  Such is true especially as some federal courts have recognized that the IDEA does not afford any procedure by which a school district can recoup from students (or their parents) costs of services for which it is ultimately held the students had no right, while this Circuit has provided no holding addressing the question.  If recoupment is not available, then when a district is ordered to reimburse a Student for past private services, should the district be forced to go forward with the reimbursement regardless of any pending appeal—no matter how meritorious—the district is effectively stripped of any remedy.  Forcing compliance with administrative orders in such a situation would effectively moot any district's appeal to a state or federal district court.

In fact, the Ninth Circuit has long recognized that an appealed administrative order is not "final," and thus unenforceable through the district courts.  *Porter v. Bd. of Trustees of Manhattan Beach Unified Sch. Dist.*, 307 F.3d 1064, 1071 (9th Cir. 2002).  Here, the Administrative Order mandates the District fund an independent mental health assessment for Student and that the District reimburse Student's parents for one year of past private placement tuition as compensatory remedies for various alleged procedural violations at issue in the underlying administrative hearing.  Both logic and precedent compel that the Administrative Order be stayed pending the outcome of these proceedings.  Defendant's attempts to seek CDE intervention—

3:16-CV-04350-HSG

Fagen Friedman & Fulfrost, LLP
70 Washington Street, Suite 205
Oakland, California 94607
Main: 510-550-8200 • Fax: 510-550-8211

1   which carries with it the threat of a loss of federal funding for the District—and CDE's own

2   position that ignores Ninth Circuit case law, compels that this Court grant the District's requested

3   TRO and issue an Order to Show Cause why the Administrative Order should not be stayed during

4   the pendency of this case.

5   **II.    BACKGROUND**

6          On April 18, 2016, Student, through his parents and *Guardians ad Litem* in this action,

7   filed a state administrative "due process" proceeding pursuant to the IDEA and California state

8   law alleging that the District had failed to offer Student a FAPE for the 2014-2015 and 2015-2016

9   school year.  (OAH Administrative Decision (Docket No. 1-1) at 2-3.)  Student, who is 16 and

10  lives in the jurisdictional boundaries of the District, has *never* attended a District school.  (*Id.* at 4

11  ¶¶ 1-3.)  Rather, at all relevant times, except for a brief time Student attended Stern School,

12  Student has been privately placed at Stanbridge Academy ("Stanbridge").  (*Id.*)

13         Student started at Stanbridge in his third-grade year.  (*Id.*)  It appears Student's placement

14  at Stanbridge had been funded through various settlement agreements with the Reed Union School

15  District prior to the 2014-2015 school year, at which time Student matriculated into the District for

16  his ninth grade year.  (*Id.* at ¶ 4.)  In April 2014, prior to that matriculation, the District proposed

17  to assess Student in the areas of academic achievement, cognitive development/learning ability

18  and speech and language in order to determine Student's needs prior to his transition to high

19  school and develop an individualized educational program ("IEP") for the 2014-2015 school year.

20  (*Id.*)

21         Student's speech and language evaluation was completed in April 2014 and revealed that

22  while Student did not have a language impairment, he exhibited needs in comprehension and

23  social pragmatics.  (*Id.* at 5 ¶ 5.)  The psychoeducational and academic assessments were

24  completed in June 2014 and established that Student performed average to above average in most

25  academic areas and exhibited average cognitive abilities.  (*Id.* at 5 ¶¶ 6-12.)  Student, however,

26  struggled with attention; demonstrating low auditory processing abilities.  (*Id.*)

27         These same assessments evaluated Student's social-emotional and behavioral functioning

28  through interviews with teachers, observations of Student, a Student interview and completion of

Fagen Friedman & Fulfrost, LLP
70 Washington Street, Suite 205
Oakland, California 94607
Main:  510-550-8200  •  Fax: 510-550-8211

1   the Conners, 3rd Edition rating scale questionnaires by Student, Student's mother and two of

2   Student's classroom teachers.  (*Id.*)  The resulting rating scales revealed varying concerns in the

3   school environment with hyperactivity, inattention and defiance/aggression and in the home

4   environment in the areas of inattention, hyperactivity, learning problems, executive functioning,

5   defiance/aggression and peer and family relations.  (*Id.*)

6       Following these assessments, on June 3, 2014, the District convened a triennial IEP

7   meeting.  (*Id.* at 6 ¶ 13.)  As a result of this meeting, the District offered Student placement in a

8   general education program at the District's Redwood High School, one period per day of resource

9   specialist (special education) support, and one 45 minute session per week of individual and group

10  speech and language therapy.  (*Id.* at 7 ¶ 14.)  While the District did not offer direct, regular

11  counseling services for Student, Student had been successful at Stanbridge with only general

12  access, as needed, to counseling services.  (*Id.* at 7-9 ¶¶ 16-19.)  Further, while Student exhibited

13  maladaptive behaviors at Stanbridge—including negative peer interactions, aggressive behaviors,

14  and an incident of pulling out a portion of his own hair—the District had no reason to believe

15  based on the information available to it that these behaviors were related to social-emotional needs

16  or needs for other behavioral supports.  (*Id.*)  At the June 3, 2014, IEP meeting, neither Student's

17  parents nor Student's teachers expressed any concern regarding need for regular school-based

18  counseling.  (*Id.*)

19      With regard to the 45 minutes per week of speech and language services offered by the

20  District, it was explained to Student's parents at the IEP meeting that the offer consisted of the

21  District's pragmatic social skills group.  (*Id.* at 9 ¶ 20, 14-15 ¶¶ 46-47.)  A District Speech and

22  Language Pathologist ("SLP") described the group as consisting of 14 students, an SLP and three

23  aides working in small groups and individually, as necessary, on each student's specific goals and

24  areas of needs.  (*Id.*)  Following the June 3, 2014, IEP meeting, Student's mother observed a

25  session of the pragmatic social skills group.  (*Id.*)

26      Student's parents did not sign consent to the June 3, 2014, IEP.  Rather Student's parents

27  provided the District with a 10-day notice of unilateral placement at Stern School and requested

28  funding of that placement.  (*Id.* at 9 ¶ 20.)  The District denied funding in a prior written notice

Fagen Friedman & Fulfrost, LLP
70 Washington Street, Suite 205
Oakland, California 94607
Main: 510-550-8200 • Fax: 510-550-8211

3

MOTION FOR TRO AND ORDER TO SHOW CAUSE

Fagen Friedman & Fulfrost, LLP
70 Washington Street, Suite 205
Oakland, California 94607
Main:  510-550-8200  •  Fax:  510-550-8211

1    ("PWN").  (*Id.*)  Student attended Stern School in Fall 2014 before being transferred back to

2    Stanbridge for the remainder of the school year.  (*Id.* at 9 ¶ 21.)  Student's parents provided the

3    District with a 10-day notice of unilateral placement at Stanbridge and requested funding of that

4    placement.  The District denied funding as well in a PWN.  (*Id.*)

5        In March 2015, the District requested that it be able to reassess Student's needs and

6    Student's parents consented.  (*Id.* at 9 ¶ 22.)  The District's re-assessment in 2015 concluded that

7    Student had made progress at his unilateral placement on goals proposed by the District in the

8    June 3, 2014, IEP.  (*Id.* at 9-10 ¶¶ 22-26.)  Student's teachers reported to the District that Student's

9    maladaptive behaviors had decreased during the year and that Student no longer had "volatile

10   outbursts."  (*Id.*)  Student continued to exhibit above average academic achievement and did not

11   have regular counseling services at either Stern or Stanbridge.  (*Id.*)

12       Student's IEP team met on May 21, 2015, to develop a District IEP offer for the 2015-

13   2016 school year.  (*Id.* at 10 ¶ 27.)  The offer largely mirrored the June 3, 2014, IEP, except that

14   Student was offered placement at Sir Francis Drake High School in special day classes for

15   English, history, math and academic workshop and general education classes for science, physical

16   education and elective.  (*Id.* at 12 ¶¶ 35-37.)  The May 21, 2015, IEP also continued to offer 45

17   minutes of group and individual speech and language services.  (*Id.*)  A District SLP explained to

18   Student's parents at the IEP meeting that this offer again consisted of the District's pragmatic

19   social skills group program which Student's mother had observed the prior year.  (*Id.* at 14-15 ¶¶

20   46-47.)

21       In June 2015, Student's parents refused the District's IEP offer and again requested

22   reimbursement for Student's private Stanbridge placement.  (*Id.* at 15 ¶ 49.)  This request was

23   denied in a PWN from the District.  (*Id.*)

24       On April 18, 2016, Student initiated a special education due process proceeding with

25   OAH.  With regard to the 2014-2015 school year, Student alleged in his due process filing that the

26   District denied Student a free appropriate public education ("FAPE") by failing to offer in the June

27   3, 2014, IEP either a classroom with a low teacher to student ratio of not more than one teacher

28   per eight students or counseling services.  (*Id.* at 3.)  Student additionally alleged in his due

Fagen Friedman & Fulfrost, LLP
70 Washington Street, Suite 205
Oakland, California 94607
Main: 510-550-8200 • Fax: 510-550-8211

1    process filing that the District committed procedural violations resulting in a denial of FAPE from

2    May 21, 2015, through May 17, 2016, by failing to assess Student in the areas of mental health

3    and sensory integration.  (*Id.*)  Finally, Student alleged in his due process filing that the District

4    had denied him a FAPE from May 21, 2015 through May 17, 2016, by failing to offer in the May

5    21, 2015, IEP a classroom with a low teacher to student ratio of not more than one teacher per

6    eight students, counseling services, a clear and concise offer for speech and language therapy, and

7    adequate speech therapy for pragmatic language.  (*Id.*)

8         Following a three day evidentiary hearing, OAH issued its decision on July 8, 2016.  In

9    that decision, OAH held that Student had failed to meet his burden of proof of demonstrating that

10   in 2014-2015 he required a classroom with a 1:8 teacher to student ratio or counseling services.

11   (*Id.* at 18-19 ¶¶ 6-12.)  OAH held that Student had failed to meet his burden of proof that he had

12   any sensory integration needs such that sensory integration was a suspected area of disability.  (*Id.*

13   at 19-20, ¶¶ 13-15.)  OAH also held that for the period of May 21, 2015, through May 16, 2016,

14   Student failed to meet his burden of proof that he required a classroom with a 1:8 teacher to

15   student ratio or that he required counseling services.  (*Id.* at 22 ¶¶ 23-25.)

16        OAH held that Student had *not* met his burden of proof for the period of May 21, 2015,

17   through May 16, 2016, that he had need for regular mental health counseling.  OAH further held

18   that the evidence established that Student's behavioral difficulties had decreased significantly at

19   that time.  Despite these findings, OAH nevertheless held that the District should have *assessed*

20   Student's mental health needs as the District should have *suspected* Student had such needs based

21   largely on Student's behavior in June 2014; nearly a year prior.  (*Compare Id.* at 23 ¶¶ 26-27 *to Id.*

22   at 20-21 ¶¶ 16-21)  As a remedy, OAH ordered the District to fund an independent mental health

23   evaluation.  (*Id.* at 27 ¶ 5.)

24        With regard to speech and language, OAH held that the evidence established that the

25   District, in both June 2014 and May 2015, specifically offered Student the District's pragmatic

26   social skills group, that Student's mother had observed this group, and that the District described

27   the structure of this group as primarily small-group services with individual services as-needed.

28   Despite these findings, OAH held that the IEP was not sufficiently clear because boxes for both

Fagen Friedman & Fulfrost, LLP
70 Washington Street, Suite 205
Oakland, California 94607
Main: 510-550-8200 • Fax: 510-550-8211

1  "individual" and "group" speech and language services were checked.  (*Id*. at 23-25 ¶¶ 28-35.)

2  OAH deemed this to be a fatal procedural error, and as a result ordered the District fund nearly the

3  entirety of Student's placement at Stanbridge for the entirety of the 2015-2016 school year plus

4  transportation costs. (*Id*. at 29 ¶¶ 11-12.)

5      The District timely filed suit in this Court on August 2, 2016, seeking *de novo* review of

6  the administrative decision.  (Docket No. 1.)  A waiver of service of process was sent to counsel

7  for Student on August 9, executed by Student's counsel on August 18, and filed with this Court on

8  August 22.  (Docket No. 8.)

9      On July 25, 2016, just prior to the filing of the District's action, Student filed a Compliance

10  Complaint with CDE complaining that the District had failed to provide Student's parents with

11  District policy information on obtaining independent educational evaluations ("IEE") as per the

12  Administrative Order.  (Declaration of Amira Mostafa ("Mostafa Declaration") at ¶ 2). This

13  complaint was withdrawn by Student after the District supplied the information.  (*Id.*)

14      On August 5, 2016, following notification of the District's filing of its appeal, Student's

15  counsel contacted counsel for the District demanding the District contract with Student's chosen

16  assessor as per the Administrative Order.  (Declaration of David R. Mishook ("Mishook

17  Declaration") at ¶ 2.)  When District's counsel informed Student's counsel that the District's

18  position, based on case law, was that the Administrative Order was unenforceable pending appeal,

19  Student's counsel stated that she would file another Compliance Complaint.  (*Id.*)  This

20  compliance complaint was filed August 22, 2016.  (Mishook Declaration at ¶ 3.)

21      Finally, on August 24, 2016, the District received a Corrective Action Notice from CDE in

22  which CDE demands proof of the District's compliance with the Administrative Order.  (Mostafa

23  Declaration at ¶ 3.)  Following this, counsel for the District contacted CDE's Focused Monitoring

24  Division and learned that, despite federal decisions to the contrary, CDE deems appealed

25  administrative orders enforceable.  (Mishook Declaration at ¶¶ 4-6.)  Failure to provide proof to

26  CDE that the District has complied with the Administrative Order, regardless of the pendency of

27  this case, will result in a letter informing the District that it is out of compliance and that it may be

28  subject to sanctions, up to and including the loss of funding.  (*Id.*)

III.    **ARGUMENT**

A.      **Standard of Review**

The standards for grant of a TRO in this Court are well settled:

> The same legal standard applies to a motion for a temporary restraining order and a motion for a preliminary injunction. *See Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.,* 240 F.3d 832, 839 n. 7 (9th Cir.2001). A plaintiff seeking either remedy "must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Am. Trucking Associations, Inc. v. City of Los Angeles*, 559 F.3d 1046, 1052 (9th Cir.2009) (quoting *Winter v. Nat. Resources Defense Council*, 555 U.S. 7, 20, 129 S.Ct. 365, 172 L.Ed.2d 249 (2008)). Injunctive relief is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter*, 555 U.S. at 22, 129 S.Ct. 365.
>
> To grant preliminary injunctive relief, a court must find that "a certain threshold showing is made on each factor." *Leiva–Perez v. Holder*, 640 F.3d 962, 966 (9th Cir.2011). Provided that this has occurred, in balancing the four factors, " 'serious questions going to the merits' and a balance of hardships that tips sharply towards the plaintiff can support issuance of a preliminary injunction, so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir.2011).
>
> In addition, a movant seeking the issuance of an ex parte TRO must satisfy Federal Rule of Civil Procedure 65(b), which requires a showing "that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition" and certification of "efforts made to give notice and the reasons why it should not be required." Fed. R. Civ. P. 65(b)(1).

*Henry Schein, Inc. v. Cook*, No. 16-CV-03166-JST, 2016 WL 3212457, at *2 (N.D. Cal. June 10, 2016).

B.      **Ninth Circuit Precedent Already Holds that Appealed IDEA Administrative Orders are Not Enforceable.**

As an initial matter, the law in this Circuit firmly holds that state administrative orders pursuant to the IDEA properly appealed to federal district court are unenforceable as appealed orders are not "final." *Porter v. Bd. of Trustees of Manhattan Beach Unified Sch. Dist.*, 307 F.3d 1064, 1071 (9th Cir. 2002) ("Once a due process hearing issues an order that is *not appealed by either party*, the IDEA requires that the order be treated as 'final.' 20 U.S.C. § 1415(i)(1)(A)." (emphasis added)). *See, also, SM v. Cupertino Union Sch. Dist.*, No. C 05-04618 JF, 2006 WL 1530025, at *3 (N.D. Cal. June 2, 2006) ([T]his Court cannot simultaneously enforce an

1    administrative order and consider an appeal of that same administrative order.").  This holding

2    derives directly from the statutory language of the IDEA in § 1415(i)(1)(A): "A decision made in a

3    hearing conducted pursuant to subsection (f) or (k) shall be final, *except that* any party involved in

4    such hearing may appeal such decision under the provisions of subsection (g) and paragraph (2)."

5    (Emphasis added.)  *Accord* 34 C.F.R. 300.514 (stating that a decision made by a "reviewing

6    official" pursuant to state-level administrative appeals "is final unless a party brings a civil action

7    under § 300.516 [appeal to district court].").

8         Of course, the unenforceability of a state administrative order on appeal does not extend to

9    a student's right to remain in his or her current educational placement pending appeal; commonly

10   known as "stay put."  When a state administrative order "agrees with the child's parents that a

11   *change of placement* is appropriate, that placement must be treated as an agreement between the

12   State and the parents" for purposes of "stay put."  34 C.F.R. § 300.518(d) (emphasis added).  In

13   other words, if an administrative hearing officer agrees with a parent or student's contention that a

14   district has failed to design an appropriate educational program for the student and that some

15   alternative prospective placement proposed by the parent would affirmatively provide the student

16   FAPE, then the school district, regardless of an appeal of that order, is required to implement the

17   new placement for purposes of "stay put."  That is not the case here.

18        In the current case neither remedy ordered by OAH—the independent mental health

19   assessment and reimbursement to Student for past educational expenses—constitutes OAH's

20   agreement that "a change in placement is appropriate."  Rather, both remedies are explicitly

21   compensatory remedies for *past* alleged violations of FAPE.  (*See* Docket 1-1 at 26 ¶ 3, 27 ¶ 6.)

22   As the District's appeal of the OAH decision and Administrative Order was filed well-within the

23   90-day statute of limitations for appeals of adverse state administrative decisions, by Ninth Circuit

24   precedent, the Administrative Order is unenforceable pending the appeal, and a TRO and

25   Preliminary Injunction must issue on that basis alone.

26        C.    **Equitable Considerations Favor Grant of the TRO.**

27        The District can additionally demonstrate that a TRO (and Preliminary Injunction) is

28   warranted on traditional equitable grounds in this case as well.

Fagen Friedman & Fulfrost, LLP
70 Washington Street, Suite 205
Oakland, California 94607
Main: 510-550-8200 • Fax: 510-550-8211

1.      Likelihood of Success

The District can demonstrate a likelihood of success on the merits in this case.  In this action, the District's contentions are two-fold—that OAH incorrectly applied applicable law to the facts of this case and that, even if OAH had correctly applied the law, the equitable remedies ordered are excessive in light of the alleged errors by the District.

The facts as stated in Section II and as found by OAH (Docket No. 1-1) are, with limited exceptions, uncontested by the District.  In terms of Student's mental health needs, the District conducted a psycho-educational assessment prior to the 2014-2015 school year.  In that assessment, neither Student, his parents or Student's instructors expressed any concern regarding Student's mental health needs which *could not* be addressed by access to a school-based counselor on an as-needed basis.  The reassessment of Student in preparation for the 2015-2016 school year reiterated these findings.  In fact, OAH agreed that Student *had not met his burden* at hearing that he exhibited any mental health needs which required special education mental health counseling and that the limited anxiety he experienced at school had dissipated over time without such counseling.  Despite holding that Student had no demonstrable mental health needs which impacted his ability to access his education, OAH nonetheless held that Student had met the lower burden of demonstrating that the District should have suspected that he *might* have such needs; and so ordered an independent mental health assessment.

These two findings are inherently contradictory.  The standard for the provision of mental health services (and any special education service) as part of an IEP is that such services are necessary to allow a child to benefit from his or her education.  *Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist., Westchester Cty. v. Rowley*, 458 U.S. 176, 207 (1982).  OAH found that the answer to this question for Student was "no."  Thus, to then order an independent mental health assessment when Student has already been found to be ineligible for mental health services is an empty exercise; by OAH's own reasoning the results of such an assessment will not alter Student's services.  Such a holding cannot be supported on appeal.

With regard to the reimbursement for Student's 2015-2016 tuition, that order was based upon a determination that the District's 2015-2016 IEP offer was unclear in that Student's speech

Fagen Friedman & Fulfrost, LLP
70 Washington Street, Suite 205
Oakland, California 94607
Main: 510-550-8200 • Fax: 510-550-8211

9

3:16-CV-04350-HSG

1   and language services were indicated to be alternatively in the group and individual setting.

2   OAH's decision in this regard is alleged based upon the Ninth Circuit's holding in *Union School*

3   *Dist. v. Smith*, 15 F.3d 1519 (9th Cir. 1994)—that school districts must act in strict compliance

4   with the IDEA's requirement that students be provided a clear offer of FAPE.  However,

5   according to OAH, when both individual and group speech and language services are indicated for

6   a single block of time, the IEP offer cannot be clear and, thus, is a denial of FAPE.

7          OAH's holding stretches *Union* to its breaking point; elevating form over substance when

8   the evidence shows that the undisputed offer was clear.  Prior to holding that the IEP offer was

9   insufficiently clear, OAH held that Student's parents *knew* that the District's offer of speech

10  services was for the District's social pragmatics group—which was structured as a mix of small

11  group *and* individual services, as needed.  The indication on Student's IEP that speech and

12  language services would be in both the group and individual settings was, therefore, an accurate

13  reflection of the District's specific offer.  Further, OAH did not explain how a mixture of group

14  and individual services at the discretion of the speech and language pathologist would deny

15  Student a FAPE.  Indeed, OAH's holding that the District was required to explicitly specify the

16  number of minutes each of group and individual speech and language therapy in Student's IEP

17  uses *Union* to improperly impinge upon the District's inherent discretion to use the instructional

18  methodology it deems appropriate in helping Student meet his speech and language goals.  *J.L. v.*

19  *Mercer Island Sch. Dist.*, 592 F.3d 938, 952 (9th Cir. 2010) (holding that a school district has

20  discretion to choose instructional methodology).

21         Finally, given that the District's 2014-2015 and 2015-2016 IEP offers were held to be

22  reasonably calculated to provide Student a FAPE in all other respects, OAH's order of

23  reimbursement for Student's 2015-2016 private tuition based upon a single notation in the IEP is

24  inequitable.  This is especially so as Student's parents were otherwise held to have known, for a

25  fact, the specific speech and language services being offered by the District.

26         For the above reasons, the District has met its burden that it is likely to succeed on the

27  merits.

28  / / /

Fagen Friedman & Fulfrost, LLP
70 Washington Street, Suite 205
Oakland, California 94607
Main: 510-550-8200 • Fax: 510-550-8211

2.      Irreparable Harm

The District will be irreparably harmed absent a stay of enforcement of the Administrative Order.  At this moment, Student is seeking enforcement of the order with CDE while CDE has expressed its position that—absent a stay and in contradiction of federal law—an appeal of a state administrative decision to this Court is immaterial to the enforceability of the OAH decision.

The District is faced in this situation with two prejudicial choices.  First, the District could, based upon this current appeal and this Court's precedent, refuse to abide by the Administrative Order during the pendency of this case.  Such a choice carries the real and imminent risk that the District would be held by CDE to be out of compliance with the Administrative Order; the penalties for which include withholding all or part of the District's state or federal funding, probationary eligibility for future state or federal funding or an enforcement action brought by CDE itself.  5 Cal. Code Reg. §§ 3080 (adopting state compliance procedures for allegations of failure to implement administrative order under the IDEA pursuant to 34 C.F.R. 300.150 *et seq.*), 4670 (outlining penalties for local educational agency's failure to comply with State corrective actions following compliance complaint).

Second, the District could abide by the Administrative Order and pay out the funds; however, in so doing, the District would risk practically and effectively mooting any remedy it might have in this appeal.  Here, the only potential avenue for the District is to seek recoupment of the funds paid through an order of this Court.  The District has been ordered to fund an IEE, which is estimated to cost approximately $4,500, and reimburse Student's parents for the 2015-2016 school year at Stanbridge plus transportation at an estimated cost of $35,000.  (Mostafa Declaration at ¶¶ 4, 5.)  However, the District would have no procedure to recoup costs of the IEE, paid directly to the assessor chosen by Student's parents per a contract with the District, should the District prevail on that issue in this Court.

The District would, further, be prejudiced should it need to seek recoupment of funds paid directly to the Student's parents.  It is not clear to the District, should it prevail, that Student's parents would have the financial ability to comply with a recoupment order.  Further, the availability of recoupment as a remedy is, itself, unsettled in this Circuit.  While the Northern

Fagen Friedman & Fulfrost, LLP
70 Washington Street, Suite 205
Oakland, California 94607
Main: 510-550-8200 • Fax: 510-550-8211

District has held that the IDEA does not bar an order of recoupment of moneys paid by a school district to parents, no Ninth Circuit case directly addresses the issue. *See Katherine G. ex rel. Cynthia G. v. Kentfield Sch. Dist.*, 261 F. Supp. 2d 1159, 1188 (N.D. Cal. 2003) (in interpreting 34 C.F.R. § 300.512(b)(3) and 20 U.S.C. § 1415(i)(2)(B)(iii), holding that, "There is no reason to conclude that the Court may not provide such relief [of an order of recoupment].") *aff'd sub nom. Katherine G. v. Kentfield Sch. Dist.*, 112 F. App'x 586 (9th Cir. 2004) (affirmed on other grounds). Other district courts and circuits that have also addressed the issue have come to the opposite conclusion—that the IDEA does not authorize an order of recoupment of costs—meaning a school district can never recover improperly expended funds. *See D.C. v. Masucci*, 13 F. Supp. 3d 33, 41 (D.D.C. 2014) (holding that District would be irreparably harmed absent a stay since District is unable to recoup costs from Student). *Accord*, *Jenkins v. Squillacote*, 935 F.2d 303, 307 fn. 3 (D.C. Cir. 1991) (holding the IDEA does not create reciprocal obligations and so rejecting school district's argument that case is not moot because it can seek reimbursement from parents), *Town of Burlington v. Dep't of Educ. for Com. of Mass.*, 736 F.2d 773, 800 (1st Cir. 1984), *aff'd sub nom. Sch. Comm. of Town of Burlington, Mass. v. Dep't of Educ. of Mass.*, 471 U.S. 359 (1985) (same).

Based on the above, the District would be irreparably harmed should it be forced to comply with the Administrative Order.  Not only would the District be unable to recoup the costs of the independent assessment, but the practical and legal ability of the District to recoup any reimbursement paid to Student's parents is questionable at best.  Only maintaining the status quo pending judicial review will protect the interests of the parties and guarantee that the District could be ensured a remedy.

    3.    Balance of Equities and the Public Interest

The balance of equities and the public interest in an injunction also weigh in favor of the District.  In the underlying due process case, Student's parents waited for a full two years, having privately placed Student during that period, to file a due process complaint and seek reimbursement.  Student's parents did not argue that Student required a non-public placement in order to receive a FAPE.  Rather, Student's parents argued that because the District IEP offers for both years were not reasonably calculated to provide Student FAPE, they were entitled to

1   reimbursement for the private placement under the standards in *C.B. v. Garden Grove Unified*

2   *School Dist.*, 635 F.3d 1155 (9th Cir. 2011).  This strategy is common for parents of students

3   unilaterally placed in non-public or private schools in order to maximize the potential for

4   recoupment of those costs from a school district.  As can be seen in the underlying case, parents

5   benefit from rigid application of technical procedural rules to obtain public funding for their

6   school of choice without needing to prove that their child otherwise requires that placement.

7          The public interest is also served by an injunction as the unnecessary expense of public

8   funds invariably affects the District's ability to serve its student population.  With uncertain ability

9   to ever recoup funds paid to a student's parents should an underlying administrative decision be

10  overturned on appeal, the school district's rights under the IDEA effectively end at the state

11  administrative level.  Public funds would be subject to encumbrances based upon effectively

12  unappealable decision; adversely affecting a district's ability to fully fund its programs for all

13  students.

14                4.       The Threat of Injury Is Immediate.

15         Finally, addressing Rule 65(b), the threat of injury to the District is immediate.  Already

16  Student is seeking to enforce the Administrative Order and CDE has issued a Corrective Action

17  notice which afforded the District eight days to begin to comply with the Administrative Order

18  and until approximately September 15 to fully comply.  Without an immediate stay, the District

19  will face threat of sanctions by CDE despite its appeal of that same Administrative Order.

20  **IV.    CONCLUSION**

21         Despite that Ninth Circuit precedent holds that administrative orders properly on appeal are

22  not "final" and, thus, unenforceable, Student and CDE seek to have the underlying Administrative

23  Order on appeal in this action enforced against the District.  The District has demonstrated,

24  however, its likelihood of success on the merits, the irreparable injury it will suffer if forced to

25  comply with an order likely to be overturned by this Court, and that equitable considerations and

26  the public interest weight in its favor.  The threat here against the District, which includes the

27  potential loss of federal funding should it not comply with enforcement of the appealed

28  Administrative Order by CDE, is immediate.  As such, the District requests that a TRO issue from

Fagen Friedman & Fulfrost, LLP
70 Washington Street, Suite 205
Oakland, California 94607
Main: 510-550-8200 • Fax: 510-550-8211

1  this Court enjoining enforcement of the Administrative Order and that this Court issue an Order to

2  Show Cause why a Preliminary Injunction should not issue.

3

4  DATED:  September 8, 2016                FAGEN FRIEDMAN & FULFROST, LLP

5

6                                          By: _____/s David R. Mishook_____

7                                          David R. Mishook

8                                          Attorneys for TAMALPAIS UNION HIGH SCHOOL
                                           DISTRICT

9  00250-00177/3327236.1

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Fagen Friedman & Fulfrost, LLP
70 Washington Street, Suite 205
Oakland, California 94607
Main:  510-550-8200 • Fax: 510-550-8211