1

2

3

4                       UNITED STATES DISTRICT COURT

5                      NORTHERN DISTRICT OF CALIFORNIA

6

7   TAMALPAIS UNION HIGH SCHOOL                Case No.16-cv-04350-HSG
    DISTRICT,
8                                              **ORDER GRANTING IN PART AND**
                        Plaintiff,             **DENYING IN PART PLAINTIFF'S**
9                                              **MOTION TO TEMPORARILY STAY**
              v.                               **ADMINISTRATIVE ORDER**
10
    D. W.,                                     Re: Dkt. No. 12
11
                        Defendant.
12

13         Before the Court is Plaintiff Tamalpais Union High School District's ("Plaintiff") motion

14  to temporarily enjoin an order issued by non-party California Office of Administrative Hearings

15  ("COAH") in favor of Defendant D.W., a minor, and his parents, Counterclaimants Gregory Wald,

16  D.W.'s guardian ad litem, and Ingrid Sigaretta (together, "Parents") pending judicial review.  Dkt.

17  No. 12 ("Mot.").  Parents initiated the COAH hearing on behalf of D.W. under the Individuals

18  with Disabilities Education Act, 20 U.S.C. §§ 1400, *et seq.* ("IDEA"), and California Education

19  Code §§ 56500, *et seq.*, seeking reimbursement from Plaintiff for D.W.'s private education and

20  related costs.  After Parents received a partially favorable ruling, Plaintiff appealed the decision to

21  this Court.  Despite the fact that this appeal is now pending, non-party California Department of

22  Education ("CDE") has threatened to withhold state funding from Plaintiff unless it complies with

23  the COAH order.  Accordingly, Plaintiff seeks to stay enforcement pending a merits hearing on a

24  preliminary injunction.  The Court ordered Defendant to respond to the motion, and he did so.

25  Dkt. No. 14 ("Opp.").  The Court then held a hearing on Plaintiff's request for temporary relief.

26         For the reasons set forth below, the Court **GRANTS IN PART** and **DENIES IN PART**

27  Plaintiff's motion to temporarily stay enforcement of the COAH's order.  The Court does not stay

28  enforcement of the mental health evaluation but temporarily **STAYS** enforcement of the ALJ's

*United States District Court*
*Northern District of California*

United States District Court
Northern District of California

1  award for reimbursement of private tuition and transportation costs for the 2015-16 school year.

2  The temporary stay shall be in effect until the Court holds a hearing on the parties' anticipated

3  cross-motions for summary judgment, which shall also serve as a preliminary injunction hearing.

4  To that end, the Court advances its initial case management conference from November 1, 2016,

5  to October 11, 2016, at 2:00pm to set an expedited briefing schedule on that motion practice.

6          Plaintiff is **DIRECTED** to serve this order on the COAH and CDE within 24 hours and to

7  file a status report with the Court within 24 hours of any attempt by the CDE to enforce the COAH

8  order in any way, including by withholding state funding.  If the CDE does attempt to enforce the

9  COAH order, the Court will take appropriate action to enjoin the CDE's conduct at that time.

10 **I.      BACKGROUND**

11         Before turning to the factual and procedural background of this case, the Court sets forth

12 the basic legal framework of IDEA and applicable California law.

13         **A.      Legal Framework of IDEA and California Education Code §§ 56500, *et seq.***

14                 1.      Legislative Purpose of IDEA

15         IDEA was enacted "to ensure that all children with disabilities have available to them a

16 free appropriate public education that emphasizes special education and related services designed

17 to meet their unique needs," 20 U.S.C. § 1400(d)(1)(A), and "to ensure that the rights of children

18 with disabilities and parents of such children are protected," *id.* § 1400(d)(1)(B).  Before the first

19 incarnation of the statute was enacted, children with special needs were not receiving appropriate

20 educational services, were being excluded entirely from schools, were left undiagnosed, and did

21 not have access to sufficient resources.  *Id.* § 1400(c)(2).  To those ends, IDEA provides states

22 with special-education funding that is conditional upon creating rules, regulations, and policies

23 that conform to the purposes and requirements of the federal statute.  *Id.* §§ 1407, 1411-13; *Honig

24 v. Doe*, 484 U.S. 305, 310 (1988).  In California, those rules are found in the California Education

25 Code §§ 56500, *et seq.* and title 5 of the California Code of Regulations §§ 3000, *et seq.  Porter v.*

26 *Bd. of Trustees of Manhattan Beach Unified Sch. Dist.*, 307 F.3d 1064, 1066-67 (9th Cir. 2002).

27         States receiving funding under IDEA are required to provide all disabled children with a

28 "free appropriate public education."  *See id.* § 1411(d).  In large part, this means that every

United States District Court
Northern District of California

disabled child must receive an appropriate "special education" along with "related services" "at public expense." *Id.* § 1401(9). Under IDEA, a "special education" means a "specially designed instruction" that "meet[s] the unique needs of a child with a disability." *Id.* § 1401(29). "Related services" means transportation to and from school and supportive services like speech-language pathology and social work services. *Id.* § 1401(26)(A). But IDEA does not require that a local school district "maximize the potential" of a disabled student in a manner "commensurate with the opportunity provided" to their typically developing peers, only that it "confer some educational benefit." *Bd. of Educ. of the Henrick Hudson Central School Dist. v. Rowley*, 458 U.S. 176, 200-01 (1982); *accord J.L. v. Mercer Island School Dist.*, 592 F.3d 938, 950 (9th Cir. 2010).

### 2. Individualized Evaluation and Educational Programming

To ensure a free appropriate public education, IDEA requires that the local educational agency "conduct a full and individual initial evaluation" of a student "before the initial provision of special education and related services." 20 U.S.C. § 1414(a)(1). This evaluation "determine[s] whether a child is a child with a disability" within the meaning of IDEA and also "the educational needs of such child." *Id.* § 1414(a)(1)(C)(i), (ii). To do so, the local educational agency must "use a variety of assessment tools and strategies to gather relevant functional, developmental, and academic information, including information provided by the parent," "not use any single measure or assessment as the sole criterion," and "use technically sound instruments that may assess the relative contribution of cognitive and behavioral factors, in addition to physical or developmental factors." *Id.* § 1414(b)(2). The local educational agency must also ensure, among other things, that the child is assessed in all areas of suspected disability. *Id.* § 1414(b)(3)(B). After these assessments are completed, a team of qualified professionals must determine whether the child has a cognizable disability and, if so, the educational needs of the child. *Id.* § 1414(b)(4).

Once an initial evaluation report is issued, the professionals who assessed the student, in connection with other qualified professionals and the student's parents, prepare an individualized educational program ("IEP") for the student. *Id.* § 1414(c), (d). The IEP is a written statement that includes: (1) the child's present levels of academic achievement and functional performance; (2) a statement of measurable annual goals; (3) a description of how the child's progress will be

measured; (4) a statement of the special education and related services to be provided to the child; (5) an explanation of the extent to which the child will not participate with nondisabled children; (6) necessary testing accommodations; (7) the start date for the IEP; and (8) postsecondary school goals and transition plans for further education or employment. *Id.* § 1414(d). The team that created the IEP then reviews it periodically and revises it as appropriate. *Id.* § 1414(d)(4).

### 3. Complaint and Due Process Hearing

"When a party objects to the adequacy of the education provided, the construction of the IEP, or some related matter, IDEA provides procedural recourse: It requires that a State provide '[a]n opportunity for any party to present a complaint . . . with respect to any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to such child.'" *Winkelman ex. rel. Winkelman v. Parma City School Dist.*, 550 U.S. 516, 525 (2007) (quoting 20 U.S.C. § 1415(b)(6)). By presenting a complaint, a party is able to pursue a process of review that begins with an informal preliminary meeting. 20 U.S.C. § 1415(f)(1)(B)(i)(IV). If the complaint is not resolved "to the satisfaction of the parents within 30 days," *id.* § 1415(f)(1)(B)(ii), they may request an "impartial due process hearing" to be conducted either by the school district or by the state educational agency, *id.* § 1415(f)(1)(A).

During a due process hearing, the hearing officer will decide whether the school district committed a substantive or procedural violation. *Id.* § 1415(f)(3)(E).[1] A substantive violation lies if a child was denied a free appropriate public education. *Id.* § 1415(f)(3)(E)(i). "In matters alleging a procedural violation," the hearing officer "may find that a child did not receive a free appropriate public education," only if the procedural violation "(I) impeded the child's right to a free appropriate public education; (II) significantly impeded the parents' opportunity to participate in the decisionmaking process regarding the provision of a free appropriate public education to the parents' child; or (III) caused a deprivation of educational benefits." *Id.* § 1415(f)(3)(E)(ii). And IDEA allows a hearing officer (or court) to require the school district "to reimburse the parents for the cost of [private–school] enrollment if the court or hearing officer finds that the agency had not

---

[1] The state laws enacted in compliance with IDEA, rather than IDEA itself, set forth the rules of decision in a due process hearing. *See Porter*, 307 F.3d at 1068-69.

United States District Court
Northern District of California

United States District Court
Northern District of California

1   made a free appropriate public education available to the child." *Id.* § 1412(a)(10)(C)(ii).

2          If the school district, rather than the state educational agency, conducts the due process

3   hearing, then "any party aggrieved by the findings and decision rendered in such a hearing may

4   appeal such findings and decision to the State educational agency." *Id.* § 1415(g)(1).  Once the

5   state agency has reached its decision, an aggrieved party may file suit in federal court: "Any party

6   aggrieved by the findings and decision made [by the hearing officer] shall have the right to bring a

7   civil action with respect to the complaint."  *Id.* § 1415(i)(2)(A); *see also* § 1415(i)(1).

8          **B.      Factual Background**

9          The Court now turns to the facts of this case, which are taken from the underlying COAH

10  administrative decision, Dkt. No. 12-2 ("AD"), and the other materials filed by the parties.

11         D.W. is a 16-year old male who resides in Plaintiff's school district with his Parents.  *Id.* ¶

12  1.  When D.W. was three years old, he was found eligible to receive and began receiving special

13  education under the speech or language impairment category.  *Id.* ¶ 2.  In the fifth grade, he was

14  diagnosed with attention deficit hyperactivity disorder and was found eligible for special education

15  on that basis as well.  *Id.*  Before high school, D.W. had never attended a public school and had

16  been enrolled at a private school for students with mild to moderate learning differences and social

17  communication disorders.  *Id.* ¶ 3.

18         D.W. transferred into Plaintiff's school district to begin high school in the fall of 2014.  *Id.*

19  ¶ 4.  To prepare for the transition, in April 2014, Plaintiff proposed to assess D.W. in the areas of

20  academic achievement, cognitive development/learning ability, and speech and language in order

21  to develop an IEP for him.  *Id.*  His mother consented.  *Id.*  D.W.'s speech-language assessment,

22  conducted by a speech-language pathologist, showed that he exhibited special needs in language

23  comprehension and social pragmatics.  *Id.* ¶ 5.  As a result, D.W. needed frequent check-ins from

24  his teachers as well as targeted language therapy.  *Id.*  His academic and psychoeducational

25  assessment, conducted by a school psychologist in June 2014, showed average or above average

26  performance in most academic areas and average cognitive abilities, but also reflected that D.W.

27  struggled with defiance/aggression, hyperactivity, learning, executive function, inattention, and

28  social relations.  *Id.* ¶¶ 6-11.  This confirmed D.W.'s need for multiple classroom accommodations

United States District Court
Northern District of California

1   and potentially coaching and support around emotional and behavioral management. *Id.* ¶ 12. In

2   sum, D.W. remained eligible for special education. *Id.*

3         Following these assessments, in June 2014, Plaintiff convened an IEP team meeting with

4   the Parents. *Id.* ¶ 13. Under the proposed IEP, Plaintiff offered to place D.W. in a general

5   education program at a public high school within the district, but with resource specialist support

6   for one period each day, individual and group speech and language therapy for 45 minutes each

7   week, and various classroom and out-of-classroom accommodations. *Id.* ¶ 14.

8         After D.W.'s mother visited and observed a social skills class, Parents decided to place

9   D.W. in a new private high school and requested reimbursement on the basis that the proposed

10  IEP did not provide a free appropriate public education, as required by IDEA and the California

11  Education Code. *Id.* ¶ 20. On August 11, 2014, Plaintiff denied the funding request. *Id.* D.W.

12  attended the new school for the fall of 2014, but ultimately transferred back to his previous private

13  school for the remainder of the school year. *Id.* ¶ 21. Parents notified Plaintiff about this new

14  placement and again requested reimbursement, and Plaintiff again denied the request. *Id.*

15        On March 13, 2015, in anticipation of the annual IEP meeting, Plaintiff requested that

16  Parents allow it to reassess D.W.'s needs. *Id.* ¶ 22. His father consented. *Id.* The assessment was

17  completed on May 21, 2015, and it concluded that D.W. had made progress on the academic and

18  psychoeducational goals set during his previous assessment, but his maladaptive behaviors had not

19  disappeared. *Id.* ¶¶ 23-25. D.W. had also made progress on his speech and language goals, but

20  continued to struggle with social pragmatics. *Id.* ¶ 26. Following these assessments, on May 21,

21  2015, Plaintiff convened an IEP team. *Id.* ¶ 27. The 2015 IEP set the same goals as the 2014 IEP,

22  but added several new goals for transitioning and social pragmatics. *Id.* ¶ 35. D.W.'s special

23  accommodations remained the same. *Id.* Based on these findings, the 2015 IEP offered to place

24  D.W. in a public high school with special education day classes for certain subjects, general

25  education classes for others, and individual and group speech and language services. *Id.* ¶¶ 36-37.

26        After the IEP meeting, D.W.'s mother again visited and observed the special day class that

27  the IEP offered. *Id.* ¶ 49. On June 17, 2015, Parents refused the 2015 IEP offer and requested

28  funding to place D.W. in the private school he attended before high school. *Id.* Plaintiff denied

the request.  *Id.*  D.W. now attends a public school within Plaintiff's school district.  Opp. at 6.

### C.   Procedural History

#### 1.   Administrative Due Process Hearing

On April 18, 2016, Parents initiated a due process hearing before the COAH alleging that Plaintiff had denied D.W. a free appropriate public education for the 2014-15 and 2015-16 school years, in violation of the IDEA and California Education Code.  *Id.* ¶¶ 24-27.  Specifically, with respect to both the 2014-15 and 2015-16 school years, Parents alleged that Plaintiff had failed to offer D.W. classes with a small enough student-to-teacher ratio and failed to offer any counseling services.  *Id.* ¶¶ 15-16, 38, 42.  With respect to the 2015-16 school year, Parents also alleged that Plaintiff had failed to offer mental health and sensory integration evaluations before creating the 2015 IEP, *id.* ¶¶ 28, 34, that Plaintiff's speech and language therapy offer was unclear as to whether and how often services would be provided in a group versus individual setting, *id.* ¶ 45, and that Plaintiff did not offer sufficient speech and language services regardless, *id.* ¶ 48.

On July 8, 2016, after a three-day evidentiary hearing, an administrative law judge with the COAH, the Hon. Lisa Lunsford ("ALJ"), found that Plaintiff did not deny D.W. a free appropriate public education for 2014-15 or 2015-16 by failing to offer sufficient special education services.[2] *Id.* ¶ 28.  But the ALJ found that Plaintiff failed to offer D.W. a free appropriate public education for the 2015-16 school year by failing to provide a mental health assessment or a sufficiently clear IEP offer for speech and language therapy.  *Id.* ¶¶ 28-30.  As a remedy, the ALJ ordered Plaintiff to reimburse Parents for D.W.'s 2015-16 private school tuition and transportation costs as well as pay for an independent mental health evaluation.  *Id.* ¶¶ 29-30.

#### 2.   Federal Appeal and CDE Corrective Action

Plaintiff filed this appeal against D.W. on August 2, 2016, seeking reversal of the ALJ's order awarding reimbursement and a mental health evaluation.  D.W. filed an answer and Parents counterclaimed against Plaintiff for the 2014-15 tuition and transportation expenses.  Dkt. No. 8.[3]

---

[2] The ALJ did not reach the question of whether Plaintiff's IEP for speech and language therapy was sufficient because she found an *a priori* procedural violation, as discussed below.  *Id.* ¶ 36.
[3] After appearing in the action, D.W.'s father also petitioned for appointment as D.W.'s guardian ad litem, Dkt. No. 10, and the Court granted the petition, Dkt. No. 11.

United States District Court
Northern District of California

1    On August 5, 2016, counsel for D.W. and his Parents requested that Plaintiff's counsel

2    contact their chosen assessor to begin the process of conducting the ALJ's ordered independent

3    mental health review of D.W.  Dkt. No. 12-2 ¶ 2.  Plaintiff's counsel responded that his client

4    would not be funding the assessment because it contended that an ALJ's order under IDEA and

5    the California Education Code is unenforceable pending an appeal to a federal district court.  *Id.*

6    On August 22, 2016, D.W. and Parents filed a compliance complaint with the CDE, which

7    asserted that Plaintiff was improperly refusing to comply with the COAH order.  *Id.* ¶ 3 & Ex. B.

8    On August 24, 2016, Plaintiff received a corrective action notice from the CDE.  Dkt. No. 12-3 ¶ 3

9    & Ex. A.  The notice directed Plaintiff to provide the CDE with proof that it complied with the

10   ALJ's order by certain deadlines.  Specifically, the CDE directed Plaintiff to prove to it that: (1)

11   Plaintiff sent its criteria for obtaining an independent educational evaluation to Parents, offered to

12   Parents an independent mental health evaluation for D.W., offered a list of potential assessors for

13   D.W., and received Parents' selected assessor by September 1, 2016; (2) Plaintiff entered into a

14   contract with Parents' selected assessor by September 30, 2016; (3) Plaintiff gave a memorandum

15   to D.W.'s individualized education program team clarifying its past offer for speech and language

16   services by September 30, 2016; and (4) Plaintiff reimbursed Parents for D.W.'s 2015-16 tuition

17   and transportation expenses by September 1, 2016.  *Id.*

18   After receiving this notice, Plaintiff's counsel spoke with an individual from the Focused

19   Monitoring and Technical Assistance Unit of the CDE, who informed him that CDE's current

20   policy is to enforce COAH orders regardless of whether they are being appealed.  *Id.* ¶ 5.

21   Plaintiff's counsel then spoke with the administrator of that CDE unit, who informed him that the

22   CDE would not change its position about the enforceability of orders on appeal.  *Id.* ¶ 6.  That

23   administrator also informed Plaintiff's counsel that if Plaintiff did not comply with the corrective

24   action notice, the CDE would notify Plaintiff that it was out of compliance and could be subject to

25   sanctions, up to and including the loss of state funding for the school district.  *Id.*

26         3.    Plaintiff's Motion for a Stay of Enforcement Pending Appeal

27   On September 8, 2016, Plaintiff filed the instant motion for a temporary restraining order

28

United States District Court
Northern District of California

and for an order to show cause why a preliminary injunction should not issue.[4]  Plaintiff contends the Ninth Circuit has held that the IDEA automatically stays enforcement of an underlying agency order pending appeal.  Mot. at 7-8; *see also* 20 U.S.C. § 1415(i)(1)(A); *Porter*, 307 F.3d at 1071. The only exception to this rule, according to Plaintiff, is that a student may remain in his current educational placement pending an appeal, unless his parents and the state agree otherwise.  Mot. at 8; *see also* 20 U.S.C. § 1415(j).  But Plaintiff argues that this "stay put" provision does not apply because D.W.'s current educational placement is not at issue.  Furthermore, even if the COAH order was not automatically stayed pending appeal, Plaintiff asserts that a stay of the COAH order is necessary because it has been given a Hobson's choice: either it can comply with the order and moot its appeal in favor of some kind of recoupment action, or not comply and potentially lose its state funding as the CDE has threatened.  To that effect, Plaintiff also argues that it is likely to prevail on this appeal and that the balance of hardships and public interest weighs in its favor.

The Court ordered D.W. and his Parents to respond to Plaintiff's motion on September 9, 2016.  Dkt. No. 13.  They did so, arguing that California has a duty to implement administrative orders under the IDEA and California law, making them enforceable pending appeal.  Opp. at 4-5. They also argue that there is no risk of irreparable injury because the Court can order recoupment from the Parents if they are unsuccessful in defending the COAH decision.  *Id.* at 3.  Furthermore, they argue that there is no likelihood that Plaintiff will prevail on the merits.  *Id.* at 5-6.

The Court held a hearing on Plaintiff's motion on September 19, 2016.  *See* Dkt. No. 15.

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 65 governs temporary restraining orders and preliminary injunctions.  A preliminary injunction enjoins conduct pending a trial on the merits.  *See* Fed. R. Civ. P. 65(a).  A temporary restraining order enjoins conduct pending a hearing on a preliminary injunction.  *See* Fed. R. Civ. P. 65(b).  Where notice of a motion for a temporary restraining order is given, the same legal standard applies as a motion for a preliminary injunction.  *See Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n. 7 (9th Cir. 2001).

---

[4] Plaintiff styled its motion as "ex parte," but notice was given to Defendant and Counterclaimants through ECF.  It does appear that the motion was ex parte with respect to the CDE and COAH.

A plaintiff seeking preliminary relief "must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Resources Defense Council*, 555 U.S. 7, 20 (2008). Preliminary relief is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Id.* at 22. A court must find that "a certain threshold showing is made on each factor." *Leiva–Perez v. Holder*, 640 F.3d 962, 966 (9th Cir. 2011). Provided that the movant has made this showing, in balancing the four factors, "serious questions going to the merits and a balance of hardships that tips sharply towards the plaintiff can support issuance of a preliminary injunction, so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011).

## III.    DISCUSSION

Plaintiff requests that the Court temporarily enjoin enforcement of the ALJ's order. The Court first turns to Plaintiff's threshold argument that the orders of administrative law judges from due process hearings are automatically stayed once an aggrieved party files a civil action in a district court. Finding that the statutory text, legislative history, and precedent do not support that interpretation, the Court proceeds to conduct a traditional preliminary relief analysis. The Court concludes that the ALJ's order should be stayed only in part pending summary judgment.

### A.    Enforceability of Due Process Hearing Orders Pending Appeal

The Court first addresses Plaintiff's contention that orders from due process hearings held under IDEA and applicable California law are automatically stayed when an aggrieved party files an appeal. If that were true, then the Court would not need to undertake a traditional stay analysis.

Plaintiff relies primarily on 20 U.S.C. § 1415(i)(2), which describes the administrative procedures that control appeals from hearing decisions. The statute provides that: "A decision made in a hearing conducted pursuant to subsection (f) or (k) shall be final, except that any party involved in such hearing may appeal such decision under the provisions of subsection (g) and paragraph (2)." *Id.* § 1415(i)(1)(A). Subsections (f) and (k) refer to the rules governing due process hearings and hearings on the removal of a student from a school for violating school rules.

1  20 U.S.C. §§ 1415(f), (k).  Subsection (g) governs situations where the initial due process hearing

2  was held before a school district and provides that an aggrieved party has the right to appeal that

3  decision to a state educational agency, *id.* § 1415(g)(1), (g)(2); paragraph (2) provides that a party

4  aggrieved by the findings and decision made under subsections (f) and (k) has the right to bring a

5  civil action in a state court of competent jurisdiction or a federal district court, *id.* § 1415(i)(2)(A).

6  Reading these provisions together, IDEA provides that: (1) the decision of a local educational

7  agency "shall be final, except that" any party may appeal that decision to a state agency; (2) the

8  decision of a state agency "shall be final, except that" any party may bring a civil action in state or

9  federal court appealing that decision.  *See id.* § 1415(f), (g), (i), (k).  Plaintiff's argument is that

10  the word "except" means when an appeal has been filed to a district court, as here, the underlying

11  decision by a state agency is automatically not "final" and therefore unenforceable.

12          Although the Court was initially inclined to agree with Plaintiff, a thorough review of the

13  statutory scheme, legislative history, regulations, and precedent compel it to conclude otherwise.

14  The starting point is the statutory text.  *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 951

15  (9th Cir. 2009) ("The preeminent canon of statutory interpretation requires us to presume that [the]

16  legislature says in a statute what it means and means in a statute what it says there.  Thus, our

17  inquiry begins with the statutory text, and ends there as well if the text is unambiguous.").  The

18  text at issue states that "a decision made [in a state educational agency] shall be final, except that

19  any party may bring an action [in federal court if aggrieved]."  20 U.S.C. § 1415(i)(1)(B).  This

20  provision is somewhat ambiguous as to whether an order is final and enforceable pending appeal

21  to a district court.  On the one hand, it could be read to mean that an order is final *unless* it is

22  appealed and therefore unenforceable pending appeal; on the other hand, it could be read to mean

23  that an order is final, *subject to* an appeal of that final order.  Because the Court concludes that the

24  provision is ambiguous as to this issue, it looks to legislative history, recognizing that it may be

25  "murky."  *See Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 568 (2005).  The only

26  relevant material comes from a Senate Report from the Committee on Labor and Public Welfare,

27  which interprets the exact statutory language at issue.  It states that "decisions rendered as a result

28  of the due process proceedings . . . shall be final and binding *subject only to* appropriate

United States District Court
Northern District of California

11

administrative or judicial review." S. REP. 94-168, 47, 1975 U.S.C.C.A.N. 1425, 1470 (emphasis added). This material supports an interpretation of the statute as meaning that final orders remain final on appeal, but are subject to modification or reversal upon a decision of the appellate court.

This interpretation is further confirmed by the federal regulation interpreting the provision. 34 C.F.R. § 300.152(c)(2) sets out the minimum complaint procedures that states must enact in order to be in compliance with IDEA. As relevant here, the regulation provides that if a state educational agency receives a complaint, but the complaint contains an issue that "has previously been decided in a due process hearing involving the same parties . . . [t]he due process hearing decision is *binding* on that issue [and] the [state educational agency] must inform the complainant to that effect." *Id.* (emphasis added). That a due process hearing decision is "binding" under the federal regulation, and not merely final, suggests that a decision by a state educational agency is enforceable when rendered. Similarly, the California Education Code, which is the controlling law here unless out of compliance with IDEA, provides that a due process hearing before a state educational agency "shall be the final administrative determination and *binding* on all parties." Cal. Educ. Code § 56505 (emphasis added). Taken together, the federal and state agencies appear to agree that the final decisions of state educational agencies are final and binding.

The Court also finds support for that interpretation of § 1415(i) in precedent. Although the Court could not locate any opinions from courts in this circuit that directly address the issue, the District Court for the District of Columbia has rejected Plaintiff's position. In *D.C. v. Masucci*, 13 F. Supp. 3d 33, 38 (D.D.C. 2014), the plaintiff school district appealed the decision of a state educational agency and took the position that "implementation of the [hearing officer's decision] is automatically stayed during the pendency of the appeal." The court disagreed, stating that "[t]he decision of a hearing officer is deemed 'final' *unless and until it is vacated or modified* by . . . the appropriate federal court." *Id.* at 42 (emphasis added). In addition, the cases from this district that the court has found did not discuss or apparently even consider the possibility that a final order of a state educational agency is not final, binding, and immediately enforceable barring a showing that preliminary injunctive relief is warranted. *See, e.g.*, *San Francisco Unified School Dist. v. S.W.*, No. C-10-05211, 2011 577413 (N.D. Cal. Feb. 9, 2011) (denying the plaintiff's

1    motion to stay pending appeal); *Ravenswood City School Dist. v. J.S.*, No. C 10-03950, 2010 WL

2    4807061 (N.D. Cal. Nov. 18, 2010) (denying plaintiff's motion for a preliminary injunction).

3         Furthermore, if Congress meant to provide that underlying administrative decisions are

4    automatically stayed and unenforceable pending appeal, it could say so expressly.  For example,

5    Congress did include an automatic stay provision in the procedural safeguards section of IDEA,

6    but that section does not facially apply to appeals of administrative decisions.  Known as the "stay

7    put" provision, 20 U.S.C. § 1415(j) provides that "during the pendency of any proceedings

8    conducted pursuant to this section, unless the State or local educational agency agree otherwise,

9    the child shall remain in the then-current educational placement of the child . . . until all such

10   proceedings have been completed."  This stay provision functions as an "automatic preliminary

11   injunction, meaning that the moving party need not show the traditionally required factors (e.g.,

12   irreparable harm) in order to obtain preliminary relief."  *Joshua A. v. Rocklin Unified School Dist.*,

13   559 F.3d 1036, 1037 (9th Cir. 2009).  There is no similar automatic stay provision that applies to

14   final orders of state educational agencies.[5]

15        In sum, and in consideration of the above, the Court holds that 20 U.S.C. § 1415(i)(2) does

16   not provide that all decisions of state educational agencies are automatically stayed pending appeal

17   to a district court or other court of competent jurisdiction.  Instead, a plaintiff must file a motion to

18   stay enforcement (*e.g.*, for a preliminary injunction) of the underlying order pending review.

19        Plaintiff's citation to *Porter v. Board of Trustees of Manhattan Beach Unified School

20   District*, 307 F.3d 1064 (9th Cir. 2002), does not change this conclusion.  In that case, the parents

21   of a disabled child initiated a due process hearing before a state educational agency, the California

22   Special Education Hearing Office, which rendered a decision in their favor.  *Id.* at 1067-68.  Over

23   the course of the school year, the parents argued that the school district had not fully implemented

24   the education program required by the due process hearing decision.  *Id.* at 1068.  In response,

25   they filed a civil suit against the school district in a federal district court for noncompliance.  *Id.*

26   The district court dismissed the action for failure to failing to exhaust administrative remedies by

27   _____

28   [5] The Court rejects Defendant's claim at the TRO hearing that the stay put provision applies in this
     case.  No one is challenging D.W.'s current placement, which is not at issue in any way.

first filing an appeal with the state educational agency. *Id.* The Ninth Circuit reversed, finding that there was no need for the parents to file another appeal to the state agency before filing an action in the district court because neither party had "appealed [the due process hearing] order to a court of competent jurisdiction" and therefore "the order was final and binding under the IDEA and state law." *Id.* at 1069; *see also id.* at 1071 ("Once a due process hearing issues an order that is not appealed by either party, the IDEA requires that the order be treated as 'final.'"). Because the order was final and because a state educational agency does not have jurisdiction to enforce its own final due process hearing orders, it would have been "futile or inadequate" for the parents to file a complaint in the state agency, permitting an original action in the district court. *Id.* (citing *Wyner ex rel. Wyner v. Manhattan Beach Unified School Dist.*, 223 F.3d 1026, 1030 (9th Cir. 2000)).

Plaintiff contends that *Porter*, by negative implication, must mean that if an ALJ's order in an IDEA proceeding is appealed, then it is not final, and thus not unenforceable.[6] But the Court cannot make this leap from the discussion in *Porter*. A finding that an order is final if *not* appealed does not establish that an order that *is* appealed is *not* final. Accordingly, absent clear controlling authority to the contrary, the Court agrees with the court's approach in *Masucci* and concludes that an appeal does not automatically render an ALJ's decision unenforceable.

### B.      Motion to Temporarily Stay Administrative Order

The Court now turns to Plaintiff's argument that the Court should stay enforcement of the COAH order pending review under the traditional four-part preliminary relief analysis. Applying the *Winter* test for temporary relief, the Court concludes that Plaintiff's motion will be granted in part and denied in part as set forth below.

#### 1.      Likelihood of Success on the Merits

A plaintiff seeking temporary relief must first establish that "he is likely to succeed on the merits." *Winter*, 555 U.S. at 20. Plaintiff makes three arguments on appeal: (1) it was inherently contradictory and therefore legally erroneous for the ALJ to conclude that Plaintiff needed to

---

[6] At the TRO hearing, Plaintiff's counsel acknowledged that no case has adopted this interpretation of *Porter*.

United States District Court
Northern District of California

assess D.W.'s mental health during its 2015 reevaluation when the ALJ also found that D.W. had not met his burden of showing he had any mental health needs during the 2014 evaluation; (2) the ALJ's finding that Plaintiff's 2015 IEP denied D.W. a free appropriate public education because it indicated that he would receive both group and individual language services during a single block of time is erroneous; and (3) even if Plaintiff's 2015 IEP did deny D.W. a free appropriate public education, it was inequitable for the ALJ to award Parents complete tuition reimbursement.  Mot. at 9-10.  Because each of these arguments is a discrete issue, the Court will consider each in turn.

a)   *Failure to Provide 2015 Mental Health Assessment*

The ALJ concluded that Plaintiff committed a procedural violation of the IDEA because it failed to assess D.W. for mental health issues during his 2015 evaluation despite being placed on notice of a potential disability by his 2014 evaluation.  AD ¶ 19.  Specifically, the ALJ found that Plaintiff was put on notice in 2014 that D.W. had symptoms of anxiety and aggression that could be rooted in a social-emotional or mental health condition.  *Id.* ¶ 16.  The ALJ further concluded that this procedural violation constituted a denial of a free appropriate public education for 2015-16 because it "significantly impeded Parents' opportunity to participate in the decisionmaking process regarding the provision of a [free appropriate public education] to [D.W.]" by making it "impossible for Parents to know whether [Plaintiff's] May 2015 IEP offer recommended the appropriate goals, accommodations and services to address [D.W.'s] unique needs[.]"  *Id.* ¶ 20.

A school district has a duty during an individual evaluation to assess a student in "all areas of suspected disability."  *Timothy O. v. Paso Robles Unified School Dist.*, 822 F.3d 1105, 1119 (9th Cir. 2016) (quoting 20 U.S.C. §§ 1414(a)(1)(A), (b)(3)(B)).  California Education Code § 56320(f) also requires that the child be assessed "in all areas related to the suspected disability." A disability is "suspected" when "the district has notice that the child has displayed symptoms of that disability."  *Timothy O.*, 822 F.3d at 1119.  "A school district cannot disregard a non-frivolous suspicion of which it becomes aware simply because of the subjective views of its staff, nor can it dispel this suspicion through informal observation."  *Id.* at 1121.  That said, a procedural violation of IDEA is not actionable unless it constitutes a denial of a free appropriate public education.  20 U.S.C. § 1415(f)(3)(E)(ii).  That occurs only if the procedural violation: "(I) impeded the child's

United States District Court
Northern District of California

1    right to a free appropriate public education; (II) significantly impeded the parents' opportunity to

2    participate in the decisionmaking process regarding the provision of a free appropriate public

3    education to the parents' child; or (III) caused a deprivation of educational benefits." *Id.*

4          The Court cannot find on the record before it that the ALJ likely erred in finding, relying

5    on *Timothy O.*, that Plaintiff had a duty to evaluate D.W. for mental health issues during his 2015

6    evaluation.  While the ALJ found D.W. did not establish that Plaintiff should have offered

7    counseling as a related service in his 2014 IEP, because D.W. did not meet his burden of showing

8    that his "negative peer interactions," "aggressive behaviors," and "severe episode of hair pulling"

9    "were rooted in a social-emotional need requiring counseling," AD ¶ 16, that same evidence

10   probably put Plaintiff on notice that it should have conducted a mental health evaluation the

11   following year.  As the ALJ noted in her decision, "[t]his conclusion does not conflict with the

12   earlier determination that [D.W.] did not establish a need for counseling as a related service.  The

13   two conclusions are based on different legal standards, and while the evidence showed that mental

14   health was an area of suspected disability, [D.W.] did not establish that he required counseling as a

15   related service in his June 2014 IEP in order to receive educational benefit." *Id.* ¶ 21.  The Court

16   also cannot find on the record before it that the ALJ likely erred in finding that this probable

17   procedural violation did not constitute a denial of a free appropriate public education to D.W.  The

18   Ninth Circuit made clear in *Timothy O.* that the failure to assess a student for a suspected disability

19   is a "fundamental procedural violation[]" that makes it "impossible for the IEP Team to consider

20   and recommend appropriate services necessary to address [a student's] unique needs."  822 F.3d at

21   1119.

22         Accordingly, the Court finds that Plaintiff has not met its burden of showing a likelihood

23   of prevailing on the merits on this issue, obviating the need to consider the remaining *Winter*

24   factors.  The Court appreciates that this decision may make the ALJ's order on the mental health

25   evaluation effectively unreviewable because it may not be possible for Plaintiff to seek

26   reimbursement from Parents in the event that it ultimately prevails on this appeal.  But a complete

27   risk of irreparable harm does not negate the necessity of showing of a likelihood of prevailing on

28   the merits.  *See Leiva–Perez*, 640 F.3d at 966 (threshold showing is necessary for each element of

United States District Court
Northern District of California

16

the *Winter* test).

> b)      *Unclear 2015 IEP Regarding Speech and Language Therapy*

The ALJ also concluded that Plaintiff's 2015 IEP offer was so unclear as to the provision

of individual and group speech and language therapy that it denied D.W. a free appropriate public

education.  AD ¶¶ 32-33.  Specifically, the ALJ found that:

> On the IEP, the boxes are checked for both individual and group
> services and there is no further information to describe how the 45
> minutes per week would be allotted to each.   The IEP's only
> description of the services is a "combination of individual and
> group." Such language is too vague to permit Parents to understand
> the nature, frequency and duration of the services. Although
> Tamalpais explained to Parents that the offer included a weekly 45
> minute pragmatic social skills group, the IEP does not reflect that
> the 45 minutes per week is spent solely in a group, nor does it
> reference or describe the specific group.

*Id.* ¶ 32.  The ALJ found that this procedural violation constituted a denial of a free appropriate

public education because it "significantly impeded Parents' opportunity to participate in the IEP

process" because "the evidence does not establish that parents clearly understood it."  *Id.* ¶ 33.

Alternatively, the ALJ also found that the 2015 IEP impeded D.W.'s rights:

> The offer left it to [the therapist's] discretion as to whether and how
> to apportion [D.W.'s] speech and language services between group
> and individual therapy, yet there was no agreement, nor could there
> be a guarantee, that she would be [D.W.'s] service provider
> throughout the year.  Understanding the offer and implementation of
> the services could therefore change with each service provider,
> ranging from up to 45 minutes per week of individual services to
> none at all.

*Id.* ¶ 35.  Based on these findings, the ALJ awarded Parents complete reimbursement of the private

school tuition they paid in 2015-16, as well as transportation costs.  *Id.* Remedies, ¶¶ 10-12.

The Ninth Circuit has made clear that a written IEP is a "formal requirement [that] has an

important purpose that is not merely technical . . . it should be enforced rigorously . . . [because] a

formal, written offer creates a clear record that will do much to eliminate troublesome factual

disputes many years later about when placements were offered, what placements were offered, and

what additional educational assistance was offered to supplement a placement, if any."  *Union*

*School Dist. v. Smith*, 15 F.3d 1519, 1523, 1526 (9th Cir. 1994) (holding that a school district's

United States District Court
Northern District of California

1    failure to provide any written IEP was a procedural violation of IDEA).  IDEA itself provides that

2    an IEP include a statement of the special education and related services that will be provided to the

3    student.  20 U.S.C. § 1414(d)(1)(A)(i)(IV); *accord* Cal. Educ. Code § 56345(a)(4).  IDEA also

4    requires that the IEP set forth "the anticipated frequency, location, and duration of those services

5    and modifications."  20 U.S.C. § 1414(d)(1)(A)(VII); *accord* Cal. Educ. Code § 56345(a)(7).

6         The Court finds that Plaintiff has established a likelihood of prevailing on the merits on the

7    issue of whether the 2015 IEP was insufficiently clear.  The only reason that the ALJ found the

8    IEP was so unclear as to constitute a procedural violation is because Plaintiff checked boxes for

9    both individual and group speech and language therapy without clarifying "how the 45 minutes of

10   therapy would be allotted to each."  AD ¶ 32.  The Court has serious questions regarding the

11   ALJ's conclusion that this constitutes a procedural violation of IDEA or California law.  *Union*,

12   the case that supplied the legal standard the ALJ relied upon, found that the *complete failure to*

13   *provide any written IEP at all* constitutes a complete denial of a free appropriate public education.

14   15 F.3d at 1523, 1526.  Nothing in that case suggests that an ambiguity about how 45 minutes of

15   therapy are allotted between individual and group constitutes a procedural violation.  As the Ninth

16   Circuit explained in *J.L. v. Mercer Island School District*, 592 F.3d 938, 952-53 (9th Cir. 2009),

17   "[b]ecause the individualized education program is written before the provision of any services it

18   is not reasonable to expect the school district to predict the amount of time the student will

19   actually use the accommodations to which she has been given access."  While *Mercer Island*

20   involved "on demand" services, that case tends to suggest that Plaintiff was not required to predict

21   up front how 45 minutes of "as needed" therapy services would be divided between individual and

22   group therapy services each week.  *See id.* at 953.  Moreover, the district court decisions from this

23   circuit upon which the ALJ relied involved provisions substantially less specific than the ones at

24   issue in this case and in *Mercer Island*.  *See Bend LaPine v. School Dist. v. K.H.*, No. 04-1468,

25   2005 WL 1587241 at *10 (D. Or. Jun. 2, 2005) (holding that the IEP behavior plan providing that

26   specially designed instruction would be provided "throughout the school day" was too vague and

27   indefinite to make resource commitment clear); *Marcus I. ex rel. Karen I. v. Dep't of Educ.*, No.

28   10-00381, 2011 WL 1833207, at **1, 7-8 (D. Haw. May 9, 2011) (holding that the IEP offer for

the student to attend "the public high school in [student's] home community" was not specific enough because that description could have applied to two different high schools).

Furthermore, even if this ambiguity did constitute a procedural violation, the Court also has serious questions regarding the ALJ's conclusion that the ambiguity denied D.W. a free appropriate public education. *See Mercer Island,* 592 F.3d. at 953 ("[N]ot every procedural violation results in the denial of a free appropriate public education."). The ALJ stated two legal bases for finding this purported procedural violation constituted a denial of a free appropriate public education: (1) it significantly impeded Parents' opportunity to participate in the IEP process; and (2) it impeded D.W.'s educational opportunities. On the record before it, the Court finds it unlikely that the ALJ could have properly found that this procedural error impeded the parents' opportunity to participate in the IEP formulation process given the evidence of their participation in the process of formulating the IEP and the substantial detail provided in the IEP offer. Similarly, the Court finds it unlikely that the ALJ could have properly found that the 2015 IEP caused D.W. the "loss of an educational opportunity" because she did not find that there was some theoretical allocation of the 45 minutes of therapy that would have deprived D.W. of his necessary special education. In other words, for the ALJ to have properly found that a procedural violation denied D.W. an educational opportunity in this context, it seems that the ALJ would have needed to find that there was some amount of group or individual speech or language therapy necessary to D.W.'s education. Instead, the ALJ found only that there was a "possibility of broad variation" in how much individual speech or language therapy D.W. would have received each week. That seems insufficient. *See id.*

Accordingly, the Court finds that Plaintiff has shown a likelihood of prevailing on the merits with respect to the reimbursement of the 2015-16 private tuition and transportation costs. Because the Court finds this to be the case, it need not address Plaintiff's final argument about whether awarding full tuition and transportation costs for this purported error was inequitable.

### 2.   Irreparable Injury

The Court next considers whether Plaintiff has shown it is "likely to suffer irreparable harm in the absence of preliminary relief." *Winter*, 555 U.S. at 20. The Court finds that Plaintiff

United States District Court
Northern District of California

1    has made this showing.  First, the CDE is currently demanding that Plaintiff comply with the

2    COAH order on the issue of reimbursement or it will suffer sanctions up to and including losing

3    its state educational funding.  *See* Dkt. No. 12-3 ¶ 3 & Ex. A.  While the Court cannot definitively

4    conclude that the CDE will actually remove state funding from Plaintiff if it refuses to comply

5    with the COAH order, the only evidence in the record shows that the CDE would likely sanction

6    Plaintiff for noncompliance before this appeal is resolved.    On this basis, the Court finds that

7    harm is likely and irreparable.

8          Second, even if Plaintiff agreed to reimburse Parents pending this appeal to avoid those

9    state sanctions, it is unlikely that Plaintiff would have any right to recoupment.  The D.C. Circuit

10   has held that "[i]t would be absurd to imagine a trial court ordering parents to reimburse a school

11   system for the costs of a hearing examiner's erroneous placement of their child[.]"  *Jenkins v.*

12   *Squillacote*, 935 F.2d 303, 307 n. 3 (D.C. Cir. 1991).  Courts have found these kinds of "non-

13   recoverable economic costs" to constitute irreparable harm in IDEA cases.  *See Masucci*, 13 F.

14   Supp. 3d at 41 (holding that a school district made a sufficient showing of irreparable injury to

15   preliminary enjoin enforcement of IDEA administrative order).  For this reason, the Court finds

16   that Plaintiff has shown a likelihood of irreparable injury, even if it complies with the CDE.

                        3.      Balance of the Equities

18         The next factor that the Court considers is who the balance of the equities favors.  *Winter*,

19   555 U.S. at 20.  Here, the Court finds it highly material that Parents already paid the tuition at

20   issue to the private school over one year ago.  Because this money is already a sunk cost, and no

21   amount of money is currently due and payable to the Court's knowledge, Parents will not incur

22   any additional hardship if they have to wait perhaps two or three more months to receive the

23   money if the Court affirms on appeal that they are entitled to it under IDEA and California law.

24   Neither will D.W., who is receiving an education that is not being challenged as inadequate in this

25   action.  Accordingly, because there is only a risk that the preliminary injunction will do more good

26   than harm, the Court finds the balance of the equities "tips sharply" in favor of Plaintiff.  *See*

27   *Alliance*, 632 F.3d at 1137-38.

28   ///

United States District Court
Northern District of California

### 4.   Public Interest

Finally, the Court must determine whether a preliminary injunction is in the public interest. While the public has a strong interest in ensuring that all students with special needs receive the resources that are necessary for them to have an education, it is not likely that Parents are entitled to reimbursement in this case.  Furthermore, Plaintiff oversees the education of many children, not just Defendant.  If Plaintiff lost its state funding, that would affect many students, not just one. Accordingly, the Court finds that the preliminary injunction is in the public interest.

### 5.   Summary of Findings

In sum, the Court has found that all factors weigh in favor of granting a temporary injunction that stays enforcement of the COAH order as to the reimbursement issue pending judicial review.  Accordingly, the Court will enter a temporary injunction to that effect.

### C.   Federal Authority to Enforce This Order on the CDE

Finally, the Court takes a moment to explain that it has the power to explicitly enjoin the CDE from enforcing the COAH order in light of this order staying enforcement pending appeal.

The All Writs Act provides that: "The Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law."  28 U.S.C. § 1651.  "The power conferred by the Act extends, under appropriate circumstances, to persons who, though not parties to the original action or engaged in wrongdoing, are in a position to frustrate the implementation of a court order or the proper administration of justice."  *United States v. N.Y. Tel. Co.*, 434 U.S. 159, 174 (1977); *see also Retiree Support Grp. of Contra Costa Cty. v. Contra Costa Cty.*, No. 12-cv-00944, 2016 WL 4080294, at *4 (N.D. Cal. Jul. 29, 2016) (noting that district courts have used the All Writs Act to address the actions of non-parties that may have an effect on ongoing federal proceedings).

In short, if the CDE were to continue to seek enforcement of the reimbursement part of the ALJ's order, the Court would issue a prohibitory injunction under the All Writs Act against it.

## IV.   CONCLUSION

For the foregoing reasons, the Court **GRANTS IN PART** and **DENIES IN PART** Plaintiff's motion to temporarily stay enforcement of the COAH's order.  The Court does not stay

enforcement of the mental health evaluation but temporarily **STAYS** enforcement of the ALJ's award for reimbursement of private tuition and transportation costs for the 2015-16 school year. The temporary stay shall be in effect until the Court holds a hearing on the parties' anticipated cross-motions for summary judgment, which shall also serve as a preliminary injunction hearing. To that end, the Court advances its initial case management conference from November 1, 2016, to October 11, 2016, at 2:00pm to set an expedited briefing schedule on that motion practice.  The Court finds that no security is necessary from Plaintiff to secure this temporary relief.

Plaintiff is **DIRECTED** to serve this order on the COAH and CDE within 24 hours and to file a status report with the Court within 24 hours of any attempt by the CDE to enforce the reimbursement component of the COAH order in any way, including by withholding state funding.  If the CDE does attempt to enforce the COAH order, the Court will take appropriate action to enjoin the CDE's conduct at that time.

**IT IS SO ORDERED.**

Dated:  10/4/2016

HAYWOOD S. GILLIAM, JR.
United States District Judge